# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   MAKWA BUILDERS, LLC

Debtor.                                    Case No.  12-13664

## MEMORANDUM OPINION ON OBJECTION TO CLAIM

THIS MATTER is before the Court on the Debtor's Objection to Claim Nos. 7-1 and 27-1 of Everguard Roofing, LLC (the "Objection") filed by Debtor, Makwa Builders, LLC ("Makwa"). (Docket No. 256). The Court held a final hearing on the Objection on September 10, 11, and 22, 2015 and October 22, 2015, and took the matter under advisement. Claimant, Everguard Roofing, LLC ("Everguard") was represented by Wayne Bingham. Makwa was represented by Adam Melton. After considering the evidence and arguments of counsel, the Court finds that Everguard is entitled to an allowed contingent claim under 11 U.S.C. § 502(b) in the full amount asserted in Claim No. 27-1, that Everguard failed to establish a right to interest or attorneys' fees, and that no amount is due at this time. Consequently, the Court will sustain, in part, and overrule, in part, the Objection.

## PROCEDURAL HISTORY

Makwa commenced this voluntary Chapter 11 case on October 3, 2012. *See* Voluntary Petition, Docket No. 1. On November 16, 2012, Everguard filed a proof of claim in the amount of $66,710.63. *See* Proof of Claim 7-1. Everguard specified "breach of contract" as the basis for its claim. On March 12, 2013, prior to the deadline to file claims, Everguard filed an amendment to its proof of claim (the proof of claim, as so amended, hereafter is called "Everguard's Claim" or the "Claim."). *See* Proof of Claim 27-1. In the amendment, Everguard increased its unsecured nonpriority claim to $76,357.90, states that the basis of the claim is "construction work at NMHU

Student Union," and asserts an entitlement to a fixed rate of 18% per annum interest. Everguard attached invoices and ledgers to the amended Claim as well as a three-page statement of the basis for the Claim (the "Statement"). *Id.* In the Statement, Everguard asserts it is entitled to interest because of Makwa's alleged violation of New Mexico's Prompt Pay Act (N.M. Stat. § 57-28-5) and because Makwa overbilled NMHU for work Everguard performed. *See id.* Makwa timely objected to Everguard's Claim. *See* Docket No. 256. In support of its objection, Makwa asserts that it has yet to receive payment from New Mexico Highlands University ("NMHU") on account of the work that forms the basis for Everguard's Claim and that, pursuant to a pay-if-paid provision in its subcontract agreement with Everguard, nothing is due to Everguard unless and until NMHU pays Makwa on account of such work. *See id.* Further, Makwa asserts it is currently in litigation with NHMU in New Mexico state court wherein NMHU claims an offset against payment due to Makwa partially based on allegedly substandard work performed by Everguard. *See id.* Finally, Makwa asserts it is, in turn, entitled to an off-set against any payment due by Makwa to Everguard equal to any amount by which NMHU is allowed to off-set its payment to Makwa on account of Everguard's substandard work.[1]

## The Plan

On April 5, 2013, Makwa filed its first plan of reorganization. *See* Chapter 11 Plan of Reorganization, Docket No. 191. About four months later, Makwa filed its first amended plan of reorganization (the "Plan"). *See* Debtor's First Amended Plan of Reorganization Dated August 5, 2013, Docket No. 246. Everguard timely filed an objection to confirmation of the Plan. *See* Objection, Docket No. 307. On January 8, 2014, the Court entered its Order Confirming Debtor's

---

[1] Makwa agrees that Everguard's work was of adequate quality, but asserts the possibility exists that the New Mexico state court or an arbitrator may find in NMHU's favor that Everguard's work was substandard, and that Everguard not Makwa bears that risk. *See* Makwa Builders, LLC's Trial Brief, Docket No. 446.

First Amended Plan of Reorganization, As Modified (the "Confirmation Order"). *See* Docket No. 310. In the Confirmation Order, the Court ruled that "[c]onfirmation of Debtor's Amended Plan, as modified, does not constitute [a] determination of whether Everguard Roofing is properly included in Class 6A or Class 6B under the Plan." *Id.*

The Plan, as confirmed, divides claims into seven classes. Class 6 includes all unsecured claims not entitled to priority under 11 U.S.C. § 507 and is further divided into five sub-classes: Class 6A includes claims by Makwa's subcontractors whose subcontract conditioned payment on Makwa having received payment from the project owner and for which Makwa has not received payment from the project owner; Class 6B includes claims by Makwa's subcontractors whose subcontract conditioned payment on Makwa having received payment from the project owner claim and for which Makwa has received payment from the project owner; Class 6D includes all other unsecured claims not entitled to priority; and Classes 6C and 6E include only claims of specifically identified claimants, none of which are Everguard.

The Plan provides that Class 6A claims are unimpaired and that each Class 6A claimant will be treated "identically to the provisions contained in the Subcontracts between Debtor and the [claimant]." The Plan further provides that allowed Class 6A claims are "entitled to payment from Debtor only if and when the Debtor is paid and only to the extent that the Debtor is paid from a Project owner." Makwa must pay allowed Class 6B claims within thirty days of the effective date of the Plan. Under the Plan, a claim may be divided between Class 6A and Class 6B where the portion of the claim for which Makwa previously received payment is a Class 6B claim and the remainder of the claim is a Class 6A claim. Class 6D is a catch-all class for all unsecured claims not entitled to priority which do not fall into either Classes 6A, 6B, 6C, or 6E. Makwa must pay allowed Class 6D claims in full within three years of the effective date of the Plan.

- 3 -

## FINDINGS OF FACT

*The General Contract*

Makwa is a construction company which at all relevant times primarily acted as a general contractor on public works projects. In April 2010, NMHU issued an invitation to bid on a contract to construct a new student center building on its campus in Las Vegas, New Mexico (the "Student Center Project"). NMHU awarded Makwa the general construction contract for the Student Center Project. On June 15, 2010, NMHU and Makwa executed the Document A101-2007, Standard Form of Agreement Between Owner and Contractor (the "General Contract"). *See* Exhibit B. The original contract price for the General Contract was $16,006,000.00. *See id.*

*The Subcontract*

Everguard is a construction company primarily engaged in roofing and siding installation. On August 5, 2010, Makwa and Everguard entered into the Makwa Builders LLC Subcontract Agreement (the "Subcontract") whereby Everguard agreed to perform roofing and Corten panel installation for the Student Center Project. *See* Exhibit A. The original contract price for the Subcontract was $632,880.00. *See id.*

Article V of the Subcontract includes provisions regarding how and when Makwa must make payments to Everguard under the Subcontract. Pursuant to Section 5.2 of the Subcontract, Everguard must create a schedule of values, with the approval of Makwa, allocating portions of the Subcontract price to categories of the work to be performed under the Subcontract (e.g., $35,000.00 for Mobilization, $118,231.00 for Insulation Labor TPO Roofs, etc.). The Subcontract provides for two types of payments from Makwa to Everguard: Progress Payments and the Final Payment. Progress Payments are periodic payments based on the work Everguard performs during

- 4 -

a given pay period.  The Final Payment is payment of the entire unpaid balance Makwa owes

Everguard after Everguard has performed all of its obligations under the Subcontract.

To receive a Progress Payment, Everguard must submit a payment application ("Pay App")

for work performed or to be performed during that application period, typically a calendar month.

Each Pay App includes Everguard's representation of the percentage of work performed or

materials purchased during that application period for each line item in Everguard's schedule of

values and requests a Progress Payment based on those percentages.  Pursuant to Rider A of the

Subcontract, the deadline for Everguard to submit a Pay App was the 20th of each month for work

performed or to be performed that month.  The Pay App could include estimates for work to be

performed through the end of the month.  In the event Everguard missed a Pay App deadline for a

given month, Everguard could request payment for work performed during that month in the

following month's Pay App.  Following Everguard's submission of a Pay App, Makwa would

incorporate the Pay App into its Application for Payment to NMHU for that month, which would

be reviewed then approved, denied, or amended by NMHU's architect.

Section 5.4 of the Subcontract and its sub-sections relate to when and how Progress

Payments are to be made under the Subcontract.  Sections 5.4 and 5.4.3 provide that Progress

Payments shall be made within seven days of the occurrence of the "conditions precedent"

specified in Sections 5.4.1 and 5.4.2."[2]  Section 5.4.1 provides that Everguard must deliver a Partial

Waiver to Makwa executed by each of Everguard's suppliers and sub-subcontractors, waiving

---

[2] Section 5.4 of the Subcontract states as follows:
>    The Progress Payment shall be paid by [Makwa] to [Everguard] (a) provided [Everguard] has
>    satisfied the conditions precedents specified in Section 5.4.1; (b) provided the condition precedent
>    specified in 5.4.2 has occurred; and (c) on the date specified in Section 5.4.3.
> Exhibit A, p. 3.  Section 5.4.3 of the Subcontract states as follows:
>    [Makwa] shall pay [Everguard] the Progress Payment within seven (7) days after all conditions
>    precedent specified in Sections 5.4.1 and 5.4.2 have occurred.
> Exhibit A, p. 3.

- 5 -

their right to record a lien on the Student Center Project with respect to services provided and materials delivered to the Student Center Project through the end of the period covered by that Pay App.[3]  Section 5.4.2 is one of the two provisions of the Subcontract which Makwa identifies as a pay-if-paid provision.  Section 5.4.2 provides that, before Makwa is required to make a progress payment to Everguard, Makwa must have received payment from NMHU on account of Everguard's work represented in that Pay App, that Everguard agrees that Makwa "is required to pay [Everguard] exclusively and only out of and from the fund created by such amounts received by [Makwa] from [NMHU] on account of [Everguard's] Work," and that Everguard acknowledges that it is accepting the risk that NMHU could become insolvent or otherwise withhold payment to Makwa.[4]

Sections 5.5 and 5.5.1 of the Subcontract relate to how and when the Final Payment must be made.  Section 5.5 provides that, before Makwa is required to make final payment to Everguard, Everguard must deliver a Final Waiver to Makwa executed by each of Everguard's suppliers and sub-subcontractors, fully and finally waiving their right to record a lien on the Student Center

---

[3] Section 5.4.1 of the Subcontract provides as follows:

>  [Everguard] shall have delivered to [Makwa] a waiver (the "Partial Waiver"), in the form specified by [Makwa], signed by each person (a "Potential Claimant") who has served a preliminary twenty day notice on [Makwa] on account of [Everguard's] Work, which waiver unconditionally shall waive all rights of the Potential Claimant to record a lien on the Project, file a claim against any bond furnished by Contractor, give a Stop Notice or Bonded Stop Notice to Owner or any Construction Lender, or make any other claim against Contractor or Owner on account of anything of value furnished to the Project by the Potential Claimant through the end of the payment period covered by the application for payment.

Exhibit A, p. 3.

[4] Section 5.4.2 of the Subcontract provides as follows:

>  [Makwa] shall have received payment (including, where applicable, payment of substitute security) from [NMHU] on account of [Everguard's] Work included within the applicable application for payment.  [Everguard] agrees that [Makwa] is required to pay [Everguard] exclusively and only out of and from the fund created by such amounts received by [Makwa] from [NMHU] on account of [Everguard's] Work.  [Everguard] acknowledges that, among other things, it is hereby assuming the credit risk of the solvency of [NMHU] and the risk that [NMHU] may withhold payment from [Makwa] for reasons having nothing to do with the performance of [Everguard].

Exhibit A, p. 3.

Project.[5]  Section 5.5.1 is nearly identical to Section 5.4.2 except that it requires that Makwa has received payment from NMHU for all of Everguard's work.[6]

Section 5.6 of the Subcontract provides that "[Makwa] may offset against any amount otherwise due [Everguard] any amount paid by [Makwa] to a Potential Claimant or owed by [Everguard] to [Makwa] for any reason."

Article VII of the Subcontract establishes Makwa's right to terminate the Subcontract for Makwa's convenience and without cause.[7]  In the event of a termination for Makwa's convenience, Section 7.3 of the Subcontract requires that Everguard receive payment for its work performed and "costs incurred by reason of such termination, subject to the provisions of Section 5.5."  Section 7.3 of the Subcontract limits Makwa's liability in the event of a termination for its convenience by providing that Everguard shall not be entitled to any further damages as a result of such termination of the Subcontract.

Additionally, Section 8.11 of the Subcontract provides that, in the event of litigation of disputes arising under the Subcontract, "the prevailing party in any such action shall be entitled to

---

[5] Section 5.5 of the Subcontract provides as follows:
> [Everguard] shall have delivered to [Makwa] a waiver (the "Final Waiver"), in the form specified by [Makwa], signed by each Potential Claimant, which waiver unconditionally, fully and finally shall waive all rights of the Potential Claimant to record a lien on the Project, file a claim against any bond furnished by [Makwa], give a Stop Notice to [NMHU] or any Construction lender, or make any other claim against [Makwa] or [NMHU] on account of anything of value furnished to the Project by the Potential Claimant at any time.

Exhibit A, pp. 3-4.

[6] Section 5.5.1 of the Subcontract provides as follows:
> [Makwa] shall have received payment (including, where applicable, payment of substitute security) from [NMHU] on account of [Everguard's] Work.  [Everguard] agrees that [Makwa] is required to pay [Everguard] exclusively only out of and from the fund created by such amounts received by [Makwa] from [NMHU] on account of [Everguard's] Work.  [Everguard] acknowledges that, among other things, it is hereby assuming the credit risk of the solvency of [NMHU] and the risk that [NMHU] may withhold payment from [Makwa] for reasons having nothing to do with the performance of [Everguard]

Exhibit A, p. 4.

[7] Section 7.1 of the Subcontract provides that Makwa "may, at any time, terminate this Agreement for [Makwa's] convenience and without cause."  Exhibit A, p. 4.

- 7 -

an award of its expenses, including but not limited to reasonable attorneys' fees and costs, to be paid by the losing party as fixed by the . . . court."

On February 21, 2011,[8] Makwa and Everguard entered into a Subcontract Change Order ("Change Order 1"), whereby Makwa agreed to perform additional work under the Subcontract and Makwa agreed to pay Everguard an additional $113,934.00 as compensation for such additional work. *See* Exhibit G. On August 29, 2011,[9] Makwa and Everguard entered into a Subcontract Change Order ("Change Order 2"), whereby Makwa agreed to perform additional work under the Subcontract and Makwa agreed to pay Everguard an additional $2,709.77 as compensation for such additional work. *See* Exhibit H. After the inclusion of Change Order 1 and Change Order 2 into the Subcontract, the total contract price for the Subcontract was $749,523.77.

### Pay Apps 1-4

From time to time, between May 20, 2011 and October 19, 2011, Everguard submitted its first four Subcontractor Applications for Payment ("Pay Apps 1-4") to Makwa. *See* Exhibits I, J, K, and I. Pay Apps 1-4 covered work Everguard performed on the Student Center Project through October 31, 2011. Makwa remitted full payment to Everguard for each of Pay Apps 1-4 for a total of $364,478.36. The following is a chart containing relevant information for Pay Apps 1-4:

|  | Period Covered | Date Everguard Submitted | Amount Everguard Requested | Date Makwa Paid | Amount Makwa Paid |
|---|---|---|---|---|---|
| Pay App 1 | 05/1-31/2011 | 05/20/2011 | $69,000.00 | 06/22/2011 | $69,000.00 |
| Pay App 2 | 06/1-30/2011 | 06/20/2011 | $20,000.00 | 07/20/2011 | $20,000.00 |
| Pay App 3 | 09/1-30/2011 | 09/20/2011 | $230,647.27 | 11/02/2011 | $230,647.27 |
| Pay App 4 | 10/1-31/2011 | 10/19/2011 | $40,880.53 | 01/04/2011 | $44,831.09 |
| Totals | - | - | $360,527.80 | - | $364,478.36 |

---

[8] Change Order 1 is dated February 11, 2011 and was signed by Makwa's authorized representative on that date but was not signed by an authorized representative of Everguard until February 21, 2011. *See* Exhibit G.

[9] Change Order 2 is dated August 29, 2011 and was signed by Everguard's authorized representative on that date. *See* Exhibit H. It is difficult to discern from the copy of Change Order 2 submitted into evidence the date on which Makwa's authorized representative executed Change Order 2, but it appears that the date ascribed below Makwa representative's signature is August 30, 2011.

The next chart contains the percent complete for each of the line items in Everguard's schedule of values for the work Everguard represented it performed during the period covered by Pay Apps 1-4:

| Item Description | Percent Complete |
|---|---|
| Mobilization | 100% |
| Insulation/Flashing Material Low Hot Roofs | 10% |
| Insulation Material TPO Roofs | 100% |
| Membrane Material TPO Roofs | 100% |
| Accessories-Screws/Adhesive/Flashing | 100% |
| Pedestals Material | 0% |
| Insulation Labor Low Hot Roofs | 0% |
| Pedestals Labor | 0% |
| Insulation Labor TPO Roofs | 92% |
| Membrane Labor TPO Roofs | 92% |
| Corten Panel-Metal | 2% |
| Corten Panel-Metal Labor | 2% |
| Contract Closeout 5% of Original Contract | 0% |
| Change Order 001 | 100% |
| Change Order 002-wood nailer | 100% |

*Pay App 5*

On November 23, 2011, Everguard submitted its fifth Subcontractor Application for Payment ("Pay App 5") to Makwa; however, a copy of Pay App 5 was not presented in evidence at the final hearing. Everguard's submission of Pay App 5 to Makwa was untimely pursuant to paragraph C-18 of Rider A to the Subcontract and, as such, Makwa rejected it. On November 30, 2011, Makwa submitted its Application for Payment No. 18 to NMHU requesting payment of $659,009.13 for work performed by its subcontractors through October 31, 2011. *See* Exhibit 4, p. 16. Makwa's Application for payment No. 18 did not include Everguard's request for payment contained in Pay App 5 due to Makwa having rejected it as untimely. NMHU approved Makwa's Application for Payment No. 18 on December 14, 2011. On December 20, 2011, NMHU issued

a check to Makwa for the full amount requested in Makwa's Application for Payment No. 18. *See* Exhibit 5, p. 4.

*Pay App 6*

On December 19, 2011, Everguard submitted its sixth Subcontractor Application for Payment ("Pay App 6") to Makwa. *See* Exhibits 1. Pay App 6 covered work Everguard performed on the Student Center Project from November 1, 2011 through December 31, 2011, and included the work Everguard previously included in Pay App 5. Everguard represented to Makwa that Everguard completed during the period: (1) purchase of an additional 85% of the insulation and flashing material for the low hot roofs; (2) an additional 6% of the labor to install insulation for the TPO roofs; (3) an additional 6% of the labor to install the membrane on the TPO roofs; (4) purchase of an additional 5% of the Corten panels; and (5) an additional 5% of the labor to install the Corten panels. In compensation for Everguard's work performed as represented in Pay App 6, Everguard requested payment from Makwa of $58,996.65. On February 1, 2012, Makwa reduced Pay App 6 by $5,967.85 because Makwa denied Everguard's request for payment related to the purchase of an additional 5% of the Corten panels and the performance of an additional 5% of the labor to install the Corten panels. *See id.* at p. 3. With this reduction, Makwa approved Pay App 6 in the amount of $53,028.80 on February 1, 2012. *See* Exhibit 1, p. 3.

*Makwa's Applications for Payment Nos. 19 & 20*

On January 1, 2012, Makwa submitted Application for Payment No. 19 to NMHU requesting payment of $350,930.20 for work performed by its subcontractors through December 31, 2011. *See* Exhibit W. On February 1, 2012, Makwa sent a letter to NMHU granting NMHU permission to reduce Makwa's Application for Payment No. 19 by $31,740.68. *See* Exhibit 11. NMHU approved Makwa's Application for Payment No. 19 in the amount of $319,189.52 on

- 10 -

February 6, 2012. The following day, February 7, 2012, NMHU issued a check to Makwa for this reduced amount. *See* Exhibit 5, p. 5.

On February 9, 2012, Makwa submitted Application for Payment No. 20 to NMHU requesting payment of $559,712.51 for work performed by its subcontractors through January 31, 2012. *See* Exhibit X. Makwa's Application for Payment No. 20 did not include any request for payment on account of Everguard's work represented in Pay App 6. *See id.* Makwa's Application for Payment No. 20 has not been approved or paid by NMHU.

*Pay App 7*

On February 17, 2012, Everguard submitted its seventh Subcontractor Application for Payment ("Pay App 7") to Makwa. *See* Exhibit O. Pay App 7 covered work Everguard performed on the Student Center Project from February 1, 2012 through February 29, 2012. Everguard represented to Makwa that Everguard completed during the period: (1) purchase of an additional 10% of the Corten panels; and (2) an additional 10% of the labor to install the Corten panels. In compensation for Everguard's work performed as represented in Pay App 7, Everguard requested payment from Makwa of $23,329.10.

*John Manville Site Report*

Johns Manville Roofing Systems ("Johns Manville") is a manufacturer of commercial roofing products that manufactured the TPO roofing materials Everguard installed on the Student Center Project. On February 14, 2012, Johns Manville conducted an inspection of the TPO roof that Everguard installed for the purpose of determining whether to guarantee the roof. On February 26, 2012, John Manville issued its "Site Visit Report – In-Progress Inspection," identifying various issues with the TPO roof that Everguard installed, including blistering on the TPO membrane and

- 11 -

damage to the roof necessitating patching. *See* Exhibit Z. Nothing in the John Manville Report stated whether John Manville would guarantee the TPO roof Everguard installed.

*The Termination for Convenience*

On February 27, 2012, NMHU delivered a letter via facsimile to Makwa terminating the General Contract for convenience pursuant to Section 14.4.1 of the General Contract (the "NMHU Termination Notice"). *See* Exhibit D. The NMHU Termination Notice provided that Makwa and its subcontractors were to immediately cease construction operations on the Student Center Project and only perform work necessary to protect the Student Center Project site. Additionally, Makwa was directed to immediately deliver to NMHU as-built plans, specifications, and warranties for work performed on and items purchased for the Student Center Project.

Due to NMHU's termination of the General Contract, Makwa was obligated to either terminate the Subcontract or to assign the Subcontract to NMHU. By letter dated March 1, 2012 (the "Makwa Termination Notice"), Makwa terminated the Subcontract for convenience pursuant to Section 7.1 of the Subcontract. *See* Exhibit 6. The Makwa Termination Notice references a letter Makwa sent to Everguard on February 27, 2012. This February 27, 2012 letter was not submitted into evidence and the Court makes no findings regarding its contents or import.

*Makwa's Application for Payment No. 21*

On February 28, 2012, Makwa submitted Application for Payment No. 21 to NMHU requesting payment of $465,138.20 for work performed by its subcontractors through February 29, 2012. *See* Exhibit Y. Makwa's Application for Payment No. 21 included a request for payment on account of Everguard's work represented in Pay Apps 6 and 7. *See id.* at p. 2, line 27. NMHU has not approved or paid Makwa's Application for Payment No. 21.

- 12 -

*Franken Hired as New General Contractor*

At or around the time NMHU terminated the General Contract, NMHU hired Franken Construction Company, Inc. ("Franken") as its general contractor to complete the Student Center Project. On February 27, 2012, Everguard received a letter from Franken stating that NMHU hired Franken as the general contractor on the Student Center Project and that it was in the process of reviewing all subcontracts and purchase orders to determine the status of the Student Center Project and the subcontracts. *See* Exhibit 7. On March 28, 2012, Franken sent a proposed subcontract agreement to Everguard for completion of the work remaining under the Subcontract at the time Makwa terminated it for convenience. *See* Exhibit 8. Franken proposed a subcontract amount of $318,334.78. As an enticement for Everguard to execute the proposed subcontract agreement, Franken certified Pay App 7 for payment by NMHU on March 30, 2012, then, on April 5, 2012, NMHU issued a check payable to Everguard for $25,210.01 (the "Franken Check") and delivered it to Franken, representing the approximate amount requested by Everguard in Pay App 7. *See* Exhibit 3. On June 4, 2012, Everguard submitted a counter-offer to the subcontract agreement proposed by Franken, requesting a subcontract price of $870,869.53 to complete the work remaining under the Subcontract. Franken and Everguard never reached an agreement for Everguard to continue working on the Student Center Project and the Franken Check was never delivered to Everguard.

*The Termination for Convenience Statement*

On April 30, 2012, Makwa submitted its Termination for Convenience Statement for Payment (the "T for C Statement") to NMHU. *See* Exhibit R. In the T for C Statement, Makwa requested NMHU to pay for all work performed by it and its subcontractors performed on the Student Center Project prior to NMHU's termination of the General Contract for convenience

which NMHU had not already paid. Included within the T for C Statement was a demand for payment for work Everguard performed included in Pay App 6 and Pay App 7. On August 10, 2012, NMHU responded to the T for C Statement denying Makwa's request for payment. *See* Exhibit S. In response, on August 30, 2012, Makwa submitted to NMHU a Notice of Claim pursuant to Section 15.1.2 of the General Contract (the "Notice of Claim"). *See* Exhibit T. NMHU has not paid Makwa for the amount requested in the T for C Statement or the Notice of Claim, and has not otherwise paid Makwa for the work Everguard performed included in Pay Apps 6 and 7. Whether and to what extent NMHU must pay Makwa the amount demanded in the T for C Statement is at issue in litigation pending in state court.

### Everguard's Work Within Makwa's Schedule of Values

In the Pre-Trial Order, Makwa asserted that it billed NMHU for Everguard's work only in line items 23, 27, and 28 of Makwa's schedule of values. *See* Pre-Trial Order, Docket No. 443, p. 12. At the final hearing, Makwa's president, Daniel Lowrie, testified that Everguard's work would not have been billed in line item 23 but would or may have been billed in line item 29, in addition to line items 27 and 28. Further, Mr. Lowrie testified that Everguard's work under Change Order 1 and Change Order 2 would have been billed in line item 74 and 75, respectively. Everguard contends that Makwa surreptitiously billed NMHU for Everguard's work in line items unrelated to its work in a scheme to defraud NMHU into paying for Everguard's work before it was performed. However, no credible evidence supports that contention. It was clear from Mr. Lowrie's testimony that he was not intimately involved with the preparation of Makwa's schedule of values or Applications for Payment to NMHU and did not have solid knowledge of the exact line items in which Makwa billed NMHU for Everguard's work. The testimony of David Simmons, Everguard's president, is of low probative value on the issue because Mr. Simmons did

- 14 -

not have firsthand knowledge of the preparation of Makwa's schedule of values or Applications for Payment to NMHU. Makwa had three successive project managers on the Student Center Project; yet, none of them testified at the final hearing. Mr. Lowrie's testimony revealed that Makwa's project managers were the persons most knowledgeable about the creation and adjustment of Makwa's schedule of values and its applications for payment to NMHU. Further, no documentary evidence was presented regarding Makwa's calculations underlying the various line items. Conversely, Makwa presented credible evidence that it was unlikely that Makwa overbilled NMHU because NMHU's architect reviewed each Application for Payment closely and made routine visits to the work site to verify that the representations of work progress contained in each Application for Payment were reasonably accurate. Additionally, all witnesses echoed the statement that the schedule of values in an Application for Payment is, by nature, imperfect and contains imprecise working estimates. Makwa designed its schedule of values using estimates of the portion of the total General Contract price that should be included in each line item. Makwa's subcontractors were authorized to estimate the expected progress percentage for the entire month when submitting pay applications on the 20th of that month. Everguard did not prove by a preponderance of the evidence that Makwa defrauded NMHU by surreptitiously billing NMHU for Everguard's work in related or unrelated line items before the work was performed.

In addition to Everguard's assertion of Makwa's surreptitious billing, Everguard identified line item 5 in Makwa's schedule of values as a possible location for Makwa to bill Everguard's mobilization costs. Line item 5, titled "Mobilization," contained a total of $51,900.00, which Makwa fully billed and NMHU fully paid prior to the termination of the General Contract and the Subcontract. Everguard's mobilization costs alone were $35,000.00 and Makwa's other subcontractors had mobilization expenses as well. It is clear Makwa did not include all

- 15 -

subcontractors' mobilization expenses within line item 5 and the Court heard no evidence that Everguard would have been singled out and included in line item 5. The Court finds that line item 5 contained only Makwa's mobilization costs and did not include any mobilization costs for its subcontractors, including Everguard.

The Court makes the following additional findings of fact related to Makwa's billing of Everguard's work. Makwa billed NMHU for Everguard's work through at least line items 27, 28, 29, 74, and 75 of Makwa's schedule of values. Makwa billed NMHU for Everguard's work on Change Order 1 and Change Order 2 only through line items 74 and 75, respectively; however, Makwa also included work performed by subcontractors other than Everguard in those line items. Makwa did not bill NMHU for Everguard's work through line items 5 or 23. The Court makes no finding on whether Makwa included work performed by subcontractors other than Everguard in line items 27, 28, and 29.

*Makwa Has Not Received Payment from NMHU the Everguard Work at Issue*

Prior to NMHU's termination of the General Contract for NMHU's convenience, Makwa submitted and NMHU paid numerous Applications for Payment. The parties only submitted in evidence complete Applications for Payment Nos. 19-21.[10]  *See* Exhibits 11, W, X, and Y. As found above, the last Application for Payment Makwa submitted and NMHU paid was Application for Payment No. 19. If Makwa received payment on account of Everguard's work represented in Pay App 6 and Pay App 7, as Everguard asserts, Makwa would have had to request payment from NMHU on account of such work in Application for Payment No. 19 or earlier.

---

[10] Everguard submitted the coversheet for Makwa's Applications for Payment Nos. 1-12, 14-15, 17-19.  *See* Exhibit 4. However, Everguard only submitted the corresponding schedule of values for Application for Payment No. 19 (*See* Exhibit 11) and the coversheets do not contain sufficient evidence from which the Court could derive whether Makwa billed for Everguard's work within that Application for Payment.

A significant amount of Everguard's effort at the final hearing was directed at establishing that NMHU paid Makwa on account of Everguard's work in Pay App 6 and Pay App 7 because Makwa overbilled NMHU for Everguard's work in Makwa's Applications for Payment Nos. 1 – 18. Everguard sought to support this conclusion by highlighting that, at the time the General Contract and Subcontract were terminated, the line items in Makwa's schedule of values in which Everguard's work was billed did not contain enough remaining funds to pay the balance of the Subcontract price. Specifically, following Makwa's payment to Everguard for Pay Apps 1-4, a balance of $385,045.41 remained on the Subcontract price and a combined total of $271,000.00 remained unbilled in line items 27, 28 and 29 of Makwa's schedule of values, a difference of 114,045.41.[11] However, as noted above, the testimony of each witness was that Makwa's schedule of values was, by nature, an imprecise estimate of both the allocation of the General Contract price to each subcontractor's work and the percent completion of that work. Further, Everguard's argument ignores the fact that the full schedule of values for line items 27, 28, 29 of Makwa's schedule of values was not enough to pay the original Subcontract amount. The original Subcontract amount was $632,880.00; whereas, the full schedule of values for line items 27, 28, and 29 is $551,923, a difference of $80,957.00. This suggests that either Makwa's schedule of values had a built in shortfall for Everguard's work or that there were other line items in Makwa's schedule of values through which Makwa billed Everguard's work.[12] It does not establish that Makwa overbilled for Everguard's work through line items 27, 28, and 29.

---

[11] Makwa had fully billed and NMHU had fully paid line items 5, 23, 74 and 75 of Makwa's schedule of values prior to the termination of the General Contract and the Subcontract.

[12] These numbers would suggest that if the Student Center Project has progressed as planned, Makwa may have run out of money in its schedule of values to pay for Everguard's work unless there were additional line items in which Makwa intended to bill Everguard's future work. If Makwa's inability to pay Everguard was the result of its failure to schedule the full value of the Subcontract in its schedule of values, the Court seriously doubts the pay-if-paid clause would be enforceable. However, that is not the case here.

- 17 -

The Court reaches the same conclusion when examining payments Makwa received from NMHU for work Makwa billed through line items 27, 28, and 29. Prior to the termination of the General Contract, Makwa received a total of $280,923.00 from NMHU for work billed through line items 27, 28, and 29. Excluding payments Everguard received for work on Change Order 1 and Change Order 2, Everguard received a total of $258,337.35 from Makwa prior to Makwa's termination of the Subcontract for convenience. The difference between NMHU's total payments to Makwa for work billed through line items 27, 28, and 29 and the amount it paid Everguard for work which would have been billed through line items 27, 28, and 29 is approximately 8%. This is not an unreasonable difference to account for Makwa's profit, overhead, and margin of error for such a large project.[13] The Court finds that Everguard failed to meet its burden to establish that Makwa overbilled NMHU for Everguard's work in Makwa's Applications for Payment Nos. 1-18.

Application for Payment No. 19 contains no requests for payment on line items 27, 28, 29, 74, or 75 of Makwa's schedule of values.[14] As noted above, Application for Payment No. 21 requests payment for Everguard's work billed in Pay Apps 6 and 7. However, NMHU has not paid Application for Payment No. 20 or No. 21. NMHU has not paid Makwa on account of Everguard's work as represented in Pay Apps 6 and 7.

## DISCUSSION

As defined in the Bankruptcy Code, a claim includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

---

[13] The Pay if Paid Formula in the Plan for payment of Class 6B claims allows Makwa to retain 6% of any payment it receives from NMHU on account of a subcontractors work as profit and overhead. Makwa's counsel represented at the final hearing while preparing Demonstrative Exhibit 16 that Makwa's typical overhead and profit was 6%. However, Mr. Lowery did not testify to the amount of Everguard's typical overhead and profit percentage and the Subcontract does not identify what profit and overhead Makwa is entitled to or typically receives.
[14] In the column labeled "Work this Invoice" for each of those line items was $0.00. *See* Exhibit W, pp. 3 and 5. Additionally, in the same column for line items 5 and 23 was $0.00.

- 18 -

disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.A. § 101(5)(A).

Allowance of claims is governed by 11 U.S.C. § 502. Pursuant to 11 U.S.C. § 502(a), a creditor's

proof of claim filed in accordance with 11 U.S.C. § 501 is deemed allowed unless a party objects.

11 U.S.C. § 502(a).[15] Once an objection is made, the Court determines the amount of the creditor's

claim as of the date of the petition. 11 U.S.C. § 502(b).[16] Although a proof of claim filed in

accordance with Rule 3001, Fed. R. Bankr. P. constitutes prima facie evidence of the validity and

the amount of the claim,[17] once the objecting party provides sufficient probative evidence in

support of its objection, "the creditor [claimant] has the ultimate burden of persuasion as to the

validity and amount of the claim." *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband*

*Wireless Int'l Corp.)*, 295 B.R. 140, 145 (10th Cir. BAP 2003) (citing *Agricredit Corp. v. Harrison*

*(In re Harrison)*, 987 F.2d 677, 680 (10th Cir.1993)).

As an initial matter, the Court notes that Makwa does not dispute the amount of

Everguard's Claim of $76,357.90, which is based on and equals the total of Pay App 7 and the

Makwa approved Pay App 6. The disputes between Makwa and Everguard are (1) whether

Everguard's Claim should be allowed in a greater amount, (2) the proper classification of the Claim

under the Plan, and (3) whether Everguard is entitled to interest and/or attorney's fees. Though

---

[15] That section provides:
> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects. 11 U.S.C. § 502(a).

11 U.S.C. § 502(a).

[16] That section provides, in relevant part:
> Except as provided in subsections (e)(2), (f), (g), (h), and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b)(1).

[17] *See* Fed. R. Bankr. P. 3001(f). ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

- 19 -

the Confirmation Order only mentions two, Everguard's Claim could conceivably fall into one of three classes under the Plan, those being Classes 6A, 6B, and 6D.[18]   To properly classify Everguard's claim in one of those three classes, the Court must determine (1) whether Makwa has received payment from NMHU on account of the work Everguard performed represented in Pay Apps 6 and 7; and (2) whether Sections 5.4.2 and 5.5.1 of the Subcontract are enforceable pay-if-paid provisions.

*Everguard's Claim is Allowed as a Contingent Claim*

While Makwa asks the Court to disallow Everguard's Claim, Makwa does not dispute that Everguard performed the work represented in Pay App 6 and Pay App 7 and does not dispute that the amount of Everguard's Claim of $76,357.90.   Instead Makwa asserts it has no obligation to pay Everguard anything pursuant to Section 5.4.2 or 5.5.1 of the Subcontract because Makwa has not received payment from NMHU on account of Everguard's work.   The Court agrees with Makwa regarding the applicability of the pay-if-paid clause in the Subcontract, but disagrees regarding whether Everguard's claim should be allowed or disallowed.

"A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created."   *In re All Media Properties, Inc*., 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980) aff'd, 646 F.2d 193 (5th Cir. 1981).   Everguard's claim is contingent because, pursuant to Sections 5.4.2 and 5.5.1 of the Subcontract, whether and in what amount Makwa will ultimately be obligated to pay Everguard depends on whether and in what amount Makwa receives payment from NMHU

---

[18] The Court makes no determination about whether the language of the Confirmation Order limits the classification of Everguard's Claim to only Class 6A or 6B.   Due to the holdings of this Court set forth herein, that issue is immaterial.

on account of Everguard's work. In addition to the pay-if-paid provisions of Sections 5.4.2 and 5.5.1 of the Subcontract, Section 5.6 entitles Makwa to offset against amounts payable to Everguard any amount Everguard owes to Makwa. In light of Makwa's ongoing state court litigation with NMHU, in which NMHU asserts that Everguard's work was substandard, it is conceivable that Makwa's ultimate obligation to Everguard may be offset by amounts adjudged against Makwa in that state court litigation. For example, the fact finder in the state court litigation could hold Makwa vicariously liable to NMHU for negligent construction relating to work performed by Everguard. In such event, Makwa would then have an indemnity claim against Everguard, which, pursuant to Section 5.6 of the Subcontract, Makwa could offset against Everguard's Claim.

*Everguard's Claim is Not a Class 6B Claim*

Class 6B exclusively includes claims against Makwa by its subcontractors for amounts which Makwa previously received payment from the respective project owner. As stated above, NMHU has not paid Makwa on account of Everguard's work as represented in Pay App 6 and Pay App 7, which eliminates Class 6B as the appropriate classification of Everguard's Claim.

*Sections 5.4.2 and 5.5.1 Condition Payment on receipt of Payment from NMHU*

Determining whether Everguard's Claim should be classified as a Class 6A claim or a Class 6D claim under the Plan requires the Court to interpret the Subcontract. As Class 6A includes all claims by subcontractors whose subcontract conditions Makwa's payment of the subcontractor on Makwa having received payment from the project owner for the subcontractor's work, if the Subcontract contains such a condition, Everguard's Claim is included in Class 6A. However, if the Subcontract does not contain such a condition, Everguard's Claim would fall into the catch-all Class 6D.

- 21 -

Under New Mexico law, "[t]he purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *ConocoPhillips Co. v. Lyons*, 299 P.3d 844, 852 (N.M. 2013) (quoting *Cont'l Potash, Inc. v. Freeport–McMoran, Inc.*, 858 P.2d 66, 80 (N.M. 1993)). A term in a contract is ambiguous only where it "is reasonably and fairly susceptible [to] different constructions." *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993). If a contract provision is unambiguous, the court "is limited to interpreting 'the contract which the parties made for themselves [as a court] may not alter or make a new agreement for the parties.'" *ConocoPhillips Co.*, 299 P.3d at 852 (quoting *Davies v. Boyd*, 385 P.2d 950, 951 (N.M. 1963)). "Whether conditions precedent are considered . . . prerequisites to an obligation to perform under an existing agreement is controlled by the intent of the parties." *W. Commerce Bank v. Gillespie*, 775 P.2d 737, 739 (N.M. 1989).

The relevant language in Sections 5.4.2 and 5.5.1 of the Subcontract is nearly identical. Both sections provide that: (1) Makwa must pay Everguard for work performed pursuant to the Subcontract once Makwa has "received payment . . . from [NMHU] on account of [Everguard's] Work"; (2) Makwa is obligated to pay Everguard "exclusively and only out of and from the fund created by such amounts received by [Makwa] from [NMHU] on account of [Everguard's] Work"; and (3) Everguard assumes "the credit risk of the solvency of [NMHU] and the risk that [NMHU] may withhold payment from [Makwa] for reasons having nothing to do with the performance of [Everguard]." The above-quoted language is not ambiguous. The clear intent of the parties expressed by the inclusion of Sections 5.4.2 and 5.5.1 in the Subcontract was to condition Makwa's obligation to pay Everguard for work it performed pursuant to the Subcontract on Makwa having first received payment from NMHU on account of such work, thereby shifting the risk of non-payment and underpayment by NHMU from Makwa to Everguard.

- 22 -

Subcontract provisions that shift the risk of the project owner's non-payment from the general contractor to the subcontractor, often referred to as pay-if-paid provisions, are common in construction subcontracts. However, there is a split in authority regarding the enforceability of pay-if-paid provisions. While the issue remains unsettled under New Mexico law, the majority of courts addressing the issue have held that pay-if-paid/pay-when-paid provisions are enforceable when clearly drafted. *See* 8 Williston on Contracts § 19:59 (4th ed.).[19] Further, the United States Court of Appeals for the Tenth Circuit has opined that the New Mexico Supreme Court would follow that majority rule. *See MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.,* 436 F.3d 1257, 1267 (10th Cir. 2006) ("Thus, it appears that the New Mexico Supreme Court would interpret the Subcontract Agreement as containing an enforceable "pay-if-paid" clause and would enforce the clear condition in this contract as drafted by the parties.").

A minority of courts have found pay-if-paid provisions unenforceable as against public policy. *See Wm. R. Clarke Corp. v. Safeco Ins. Co.*, 938 P.2d 372, 374 (Cal. 1997); *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 197 P.3d 1032, 1042 (Nev. 2008). Those courts' decisions were based on antiwaiver provisions contained in their respective state's mechanic's lien statutes. *See Wm. R. Clarke Corp.*, 938 P.2d at 374 ("We conclude that pay if paid provisions . . . are contrary to the public policy of this state and therefore unenforceable because they effect an impermissible indirect waiver or forfeiture of the subcontractors' constitutionally protected mechanic's lien rights . . . ."); *Lehrer McGovern Bovis, Inc.*, 197 P.3d at 1042 ("Because a pay-if-paid provision limits a subcontractor's ability to be paid for work already performed, such a

---

[19] That resource provides:

> [I]t has long been the rule that, absent a statute prohibiting the provision, if the parties clearly do intend that the risk of nonpayment be borne by the subcontractor and clearly express that intent by making the right of the subcontractor to be paid expressly conditional on the receipt of such payment by the contractor from the owner, they may by contract allocate that risk, and the courts will enforce that freely bargained-for allocation of risk.

8 Williston on Contracts § 19:59 (4th ed.).

- 23 -

provision impairs the subcontractor's statutory right to place a mechanic's lien on the construction project. . . .  Therefore, we conclude that pay-if-paid provisions are unenforceable because they violate public policy.").  The reasoning of the *Clarke* and *Lehrer* courts bears little or no relevance to this case because, as a public works project, New Mexico's mechanic's lien statute is inapplicable to the Student Center Project.  *See Hasse Contracting Co. v. KBK Fin., Inc.*, 956 P.2d 816, 822 (N.M. Ct. App. 1998), aff'd but criticized on other grounds, 980 P.2d 641 (N.M. 1999) ("Section 48–2–2 does not apply to this case directly because this was a public works project, and public property cannot be subjected to a materialmen's lien under Section 48–2–2.").  Instead, N.M. Stat. §§ 13-4-18 through 13-4-20, frequently referred to as New Mexico's "little miller act," which provides subcontractors and materialmen the right to make a bond claim in lieu of filing a lien.  *See* N.M. Stat. § 13-4-19(B).  New Mexico's little miller act does not contain an express waiver provision.  Additionally, even if the Court were to consider New Mexico's mechanic's lien statute as instructive of New Mexico public policy generally, that statute does not contain an express antiwaiver provision.  *See MidAmerica Constr. Mgmt., Inc.*, 436 F.3d at 1266.[20]  In light of the Tenth Circuit's holding in *MidAmerica Construction* and the lack of an antiwaiver provision in N.M. Stat. §§ 13-4-18 through 13-4-20, the Court finds and holds that the New Mexico Supreme Court would likely enforce Sections 5.4.2 and 5.5.1 of the Subcontract as written.  Accordingly, the Court finds and holds that the Subcontract conditions payment on Makwa's receipt of payment from NHMU on behalf of Everguard's work.

---

[20] Effective June 15, 2007, the following language was added to N.M. Stat. § 48-2-10: "A contingent payment clause in a contract shall not be construed as a waiver of the right to file and enforce a mechanic's or materialman's lien pursuant to Sections 48-2-1 through 48-2-17 NMSA 1978."  No New Mexico state court or federal court has issued an opinion interpreting this language or its impact, if any, on the enforceability of pay-if-paid provisions.  The Court interprets the language quoted above as a rejection of the reasoning of the *Clarke* and *Lehrer* courts, which construed pay-if-paid provisions, as a practical matter, as waivers of the subcontractor's right to file and enforce a mechanic's lien.  *See Wm. R. Clarke Corp.*, 938 P.2d at 376 ("[A] pay if paid provision is in substance a waiver of mechanic's lien rights because it has the same practical effect as an express waiver of those rights."); *Lehrer McGovern Bovis, Inc.*, 197 P.3d at 1042.

- 24 -

Everguard argued that, pursuant to Section 7.3 of the Subcontract, neither Section 5.4.2 nor Section 5.5.1 of the Subcontract apply where Makwa terminates the Subcontract for its convenience. The relevant portion of Section 7.3 provides that, in the event of a termination for Makwa's convenience, Everguard is "entitled to receive payment for [Everguard's] work performed and costs incurred by reason of such termination, subject to the provisions of Section 5.5 of this Agreement." The Court disagrees with Everguard's reading of Section 7.3. First, Everguard's work represented in Pay App 6 and Pay App 7 was performed prior to Makwa's termination of the Subcontract for its convenience and was not performed "by reason of such termination." Secondly, Section 5.5.1 is a "provision of Section 5.5," as such, payments made pursuant to Section 7.3 are subject to the pay-if-paid clause in Section 5.5.1.[21]

*Everguard's Claim is Not entitled to Interest under the Contract or the Prompt Pay Act*

Everguard asserts that it is entitled to interest on Everguard's Claim "from February 27, 2012 to [the] present" under either the Subcontract or New Mexico's Prompt Pay Act due to the alleged delay of Makwa to remit payment on Pay Apps 6 and 7. *See* Everguard's Pretrial Brief, Docket No. 445, p. 6. As an initial matter, pursuant to Sections 5.4.2 and 5.5.1 of the Subcontract, Everguard is not presently entitled to payment of the amounts billed in Pay App 6 or Pay App 7 because Makwa has not received payment from NMHU on account of Everguard's work billed

---

[21] In the Court's Order Denying Claimant Everguard Roofing, LLC's Motion for Summary Judgement (Docket No. 429), the Court held that "[i]t is not entirely clear from the language of Section 7.3 whether its reference to Section 5.5 includes the 'pay-if/pay-when-paid' provision found in Section 5.5.1." The Court decided to give the parties an opportunity to present evidence relevant to that issue. Without evidence to the contrary of the parties' intent, the most rational reading of a provision explicitly incorporating a section, paragraph, or part of a contract is that the provision incorporates all subsections, subparagraphs, and subparts of the incorporated section, paragraph, or part. Several courts have applied a similar default rule when interpreting statutory language. *United States v. Vallejo-Ocampo*, 281 F.3d 1278 (5th Cir. 2001) ("[B]y deleting the reference to subsection two of 18 U.S.C. § 924(c), Congress expanded the definition of aggravated felony to include all subsections of 18 U.S.C. § 924(c)."); *Chavez v. Kernan*, No. C 04-1944 SI (PR), 2005 WL 1514059, at *4 (N.D. Cal. June 21, 2005) ("Section 290(g)(2)'s references to 'this section' refer to all subsections within § 290 . . ."); *Harrington v. State*, 604 A.2d 417 (Del. 1991) ("[I]t is reasonable to conclude that the General Assembly intended to include all subsections of 2701 by the reference to Section 2701 in Section 2802(1)(d)."). Here, the most rational reading of Section 7.3 is to include Section 5.5.1 in Section 7.3's incorporation of "the provisions of Section 5.5."

therein. Everguard argues that Section 8.2 of the General Contract, which entitles Makwa to interest in the event NMHU is late delivering payment, was incorporated into the Subcontract. Everguard argues that Section 1.4[22] of the Subcontract incorporates the entirety of the General Contract into the Subcontract. The Court disagrees. Section 1.4 of the Subcontract merely defines the term "General Contract" and was not intended to and does not incorporate any provisions of the General Contract into the Subcontract. When the Subcontract incorporates into it portions of the General Contract, the Subcontract does so expressly. For example, Section 2.13 of the Subcontract provides that Everguard shall "assume toward [Makwa] all the obligations and responsibilities . . . that [Makwa] assumes in and by the General Contract toward [NMHU], insofar as they are applicable to this Agreement," yet there is no analog section in the Subcontract whereby Makwa assumes toward Everguard all such obligations and responsibilities.[23] The Court's interpretation of Section 1.4 is supported by the explicit incorporation of documents found in Section 1.10[24] and the obvious definitional purpose of several other sections in Article I.[25] Thus, even if Makwa had delayed payment to Everguard, the Subcontract does not provide for interest on late payments.

---

[22] Section 1.4 provides as follows:

> The General Contract is that certain contract dated between Owner and Contractor, the plans, drawings, and specifications prepared by the Architect, and such of the following as may be applicable: the invitation to bidders; the instruction to bidders; the proposal; the form of agreement; the general conditions; the special conditions; the supplementary conditions; the bonds; and any addenda or amendments.

Exhibit A, p. 1.

[23] Article IV of the Subcontract includes the covenants of the Subcontract specifically applicable to Makwa and contains only two sub-sections. *See* Exhibit A, p. 3. Section 4.1 contains Makwa's agreement to employ Everguard to perform the Subcontract work. *See id.* Section 4.2 provides that Makwa will pay Everguard for the work performed under the Subcontract in accordance with Article V of the Subcontract. *See id.*

[24] Section 1.10 provides as follows:

> The other documents which are incorporated herein and which, together w3ith this Agreement, form the Subcontract Documents are Exhibit A, Exhibit B, Exhibit C, Exhibit C.1, Exhibit D, Rider A, Rider B, Rider C and Rider D.

Exhibit A, p. 1.

[25] Section 1.1 identifies the project owner; Section 1.2 identifies the project; Section 1.3 identifies the architect; Section 1.5 identifies the type of work to be performed; Section 1.7 identifies the insurance limits; and Section 1.9 identifies the subcontract sum. *See* Exhibit A, p. 1.

Everguard also claims interest under New Mexico's Prompt Pay Act. That Act requires a contractor to pay interest to a subcontractor if the contractor does not in good faith dispute that it has an obligation to pay the subcontractor. *See* N.M. Stat. § 57-28-5.[26] Here, Makwa certainly disputes that Everguard's Claim is presently due, and the Court has held in Makwa's favor on that issue. The Court finds and holds that Everguard is not entitled to interest on its claim under either the Subcontract or New Mexico's Prompt Pay Act.

### Everguard is Not Entitled to Attorney's Fees

Under New Mexico law, "'the prevailing party is the party who wins on the merits or on the main issue of the case.'" *Fort Knox Self Storage, Inc. v. W. Techs., Inc.*, 142 P.3d 1, 9 (N.M. Ct. App. 2006). Here, the main issue in this case was one of fact, whether NMHU had paid Makwa on account of Everguard's work as represented in Pay App 6 and Pay App 7. The Court found in Makwa's favor on that issue and, therefore, Everguard is not the prevailing party in this action. The Court holds that Everguard is not entitled to an award of its attorney's fees pursuant to Section 8.11 of the Subcontract.

### CONCLUSION

Based on the foregoing, the Court will enter an order (1) allowing Everguard a claim in the amount of $76,357.90, (2) designating such claim as a Class 6A claim under the Plan, (3) directing Makwa to deliver payment to Everguard upon receipt of payment from NMHU on account of Everguard's work pursuant to the Subcontract.

---

[26] That section provides:
> If the owner fails to pay the contractor within twenty-one days after receipt of an undisputed request for payment, the owner shall pay interest to the contractor beginning on the twenty-second day after payment was due, computed at one and one-half percent of the undisputed amount per month or fraction of a month until the payment is issued.

N.M. Stat. § 57-28-5.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 4, 2016

Copy to:

Adam Davis Melton
Langley LLP
2001 E. Campbell Ave., Suite 203
Phoenix, AZ 85016

Wayne Bingham
Bingham, Hurst & Apodaca, PC
2420 Comanche Rd., NE, Suite H-6
Albuquerque, NM 87107-4633

Alice Nystel Page
Office of U.S. Trustee
PO Box 608
Albuquerque, NM 87103-0608